221-1167, United States v. Small League. My name is Howard Pankus from the Federal Public Defender and I represent Jack Smalley. The prosecution used three of his six preemptory challenges to exclude the only three Hispanic members of the veneer. For two of those three, the reason the prosecutor gave for the challenges applied at least as well to a non-Hispanic who served on the jury. This shows the reasons were pretextual and that the prosecutor engaged in purposeful discrimination. As the exclusion of a single juror in violation of Batson requires reversal, this court should vacate Mr. Smalley's conviction of a man-friendly trial. The pattern of strikes here itself points to purposeful discrimination. Not only did the prosecutor exclude all Hispanics from the jury, he used half of his challenges against them even though they made up only 10.7% of those who could be seen as jurors. The statistical likelihood that this was just happenstance, as we point out in our reply brief, is quite small. What the statistics show is confirmed by the fact that the reason the prosecutor gave for striking two of the three Hispanics applied at least as much to non-Hispanics whom it did not strike and served on the jury. As the Supreme Court noted in Snyder v. Louisiana, a pretextual explanation naturally gives rise to an inference of discrimination. The first comparison here is between panelist number five and juror number six. Before you get to your comparative evidence, can you talk about whether plain error or clear error applies here? It may make a difference and we haven't necessarily resolved that. It's clear error, Your Honor, and Miller L. shows that to be the case as does Snyder v. Louisiana. In Miller L. What we have here is a defense counsel. You could see there was a prima facie case, or we are, I'm sorry, the district court here said there wasn't a prima facie case, but went on to step two, right? Step two. And it said that at the time, noting that Mr. Smalley was not Hispanic, which it later recognized was not true. So even if that were relevant, it may well be infected by legal error. But in any case, you're right that he asked the prosecutor to provide race-neutral reason. That moves the issue of prima facie case. Right. And the prosecutor provides the reasons, has the opportunity, provides the reasons, but then we don't have any rebuttal here. Correct. We just have, it appeared there was an opportunity to say something in rebuttal to discuss this comparative evidence, but nothing was done. So the argument is that plain error applies. Right. And Miller L. shows that not to be the case. In Miller L. there was no comparative juror analysis done in the state courts, and yet the Supreme Court, in reviewing on habeas, looked to a comparative juror analysis over the dissent of Justice Thomas on that. And again, in Snyder v. Louisiana, which was a direct appeal from a state case, the court looked at a comparison of jurors. There were comparisons made in Louisiana courts, but as Justice Thomas again pointed out in dissent, those weren't the comparisons that were made that the majority in the Supreme Court used. So in both cases, you have comparisons that were not made in the state courts. And yet the Supreme Court is considering those when they're offered in the Supreme Court. And essentially, it is my understanding, your argument, they consider them because it's essentially a theory. The facts are all there. Right. The facts are part of the record. That's what the Supreme Court said in its footnote in Miller L. This is, it's the evidence that needs to be before the court in habeas. These are just theories on evidence, and we can consider it. And it's a step three analysis as to whether there is purposeful discrimination. And that wasn't something that was at issue in Bann, where this court was looking only to the process and whether it could fault the district court for not sua sponte doing a comparative juror analysis. We are asking the court to do a comparative juror analysis here, and we're asking to do on step three, which this court in Bann said was not before because there was no such argument and it was waived. So Miller L., if the Supreme Court will do it in review of state cases, and not just direct review of a state case, but on habeas, where there are additional barriers to granting relief, this court should even more surely do a comparative juror analysis here on direct appeal from federal district court. The Sixth Circuit said that in the Batson context, it doesn't make any difference. What's your response to that? Is there a difference between the third, well, between the second step and plain error review? The plainness step. The plainness and clear error. What do you think is the distinction? Well, I mean, if you're going to find clear error, that's already a high hurdle, and it shows that the district court was clearly wrong. I'm not sure what it means to be clearly, clearly wrong or plainly, clearly wrong. And I think that's what the Sixth Circuit's point was, that effectively, it's the same review here and we would take that position as well. Certainly on steps three and four, a Batson error is structural and a Batson error goes to the integrity of the judicial process, to juror interests, to the interests of the defendant. So I don't think there's any dispute that steps three and four of plain error review would be met. Now, how do you take into account the district court's determination when the comparators are not presented to the district court? So here, the district court's decision is not that these are good reasons to strike. It's whether the prosecutor is sincere, whether this is not a protectional reason. It may be some strange reason. I don't like scientists, OK? I know attorneys who feel that way. So they'll strike any scientist. That could be, to many people, that may be a lousy reason, but as long as it's sincere, it's not a violation of Batson. Here the district court hears these reasons, might have been impressed that the prosecutor came up with these reasons very promptly, which might suggest that it's sincere because the prosecutor didn't have to, gee, how can I explain my gracious strike? How does that weigh? How do we consider that? Isn't that an important fact in determining whether these were protectional strikes? I don't think it is because we don't know why the district court ruled the way it did. And again, if you look at Snyder, two reasons were given by the prosecutor, and the district court didn't speak to one of them, and one of them was more credibility-based, and the there was a determination made on that. And I think here, where there is no explanation for why the district court ruled on step three the way it did, we also can't draw that inference. It may have been- Isn't that rather common? Do district courts explain? Don't they just say, I accept your explanation. That's a non-racial explanation. So there's no Batson violation here? Especially where there's no rebuttal. They may, and particularly where there's no rebuttal. But we don't know what was going on here, and what we do have here now is the comparative juror analysis that wasn't put before the district court, and that this court can consider. I mean, it's the same as in the habeas context, it's the same- What if the district court had been presented with the comparator, and said, you know, that's problematic, but I really don't think that that's what motivated, that it was race that motivated the prosecutor. And we totally lose the, I'll call it a benefit, of the trial judge's presence there, and seeing how things are going, and measuring the intent of the prosecutor. So if we're going to rely on comparators, we're totally disregarding those other elements, not in the sense of the last case, the elements that went into the district court's decision on the Batson issue. Well, and we lost it in Miller-Allen, we lost it in Snyder v. Louisiana as well. If the comparison shows- Doesn't that bother you? I think if the comparison is strong enough, and it shows that there's purposeful discrimination, and also here we have the oddity of the statistics. We have all of the Hispanic members of the veneer struck within six challenges by the prosecutor. We have struck at four, more than four and a half times their representation rate on the jury. We have statistical tests that show that this is- The judge knew that. The judge did know that. Can we talk about- Yeah. Sorry to talk about- I'm going to give you plenty of time. Don't worry about it. Well, the comparison right now, I wonder if you would start with the Juror 17 with Juror 25. Or 7. 7. 7, yeah. Yeah. Well- So, Juror 7 is unemployed. Right. Lives with his mom. That's essentially what we know. The prosecutor says, well, he's unemployed, and he lives with his mom. And what he's saying is, he doesn't have much to offer, and he doesn't have the life experience. Doesn't have life experience. That's what he said. And life experience is, when we compare Panelist 7 to Juror 25, there's no indication that she has any more life experience. She lives at home with her mom and grandmother. She's a college student. There's no indication that she's ever worked or been out in the world. And in fact, the prosecutor recognized this when he questioned her about what year she was in school and learned she was a senior. He said, reality hits next year, huh? And she agreed. Did he talk to her about what her degree was in? Isn't there some evidence her degree was in government, history, education? He did talk about what her major was, but that's not life experience. Well, I guess that is part of your life experience, isn't it? Your current status is part of your life experience. You do have a distinction here between a college student, not so much whether they're living with mom and grandma or living with mom, but you've got a college student studying history in her fourth year, and you've got the unemployed, not a college student, unemployed, living with mom. There is a difference there. There is a difference. I mean, is that enough, I guess, is what I mean? No. When the prosecutor is talking about life experience, the usual understanding of that would be is what you've learned out in the world. And the notion that a college student, the college student may have... You're really denigrating education. None of us had any until we left the academy. I mean, there are at least some differences between them, and I guess you're saying that because the prosecutor said life experience, then he's got to detail something besides their current life experience. Well, it just has to be something that's in their cumulative life experience. There's nothing that shows she's been out in the world. And the prosecutor... Well, her education, four years of upper education, is her current life experience. Right. And that is distinct. It is, yeah. I mean, I guess I see your argument about seven and 25 a little bit less strong. Well, we could... The prosecutor also... I'm sorry. Than 16, or six and 15. The prosecutor could also question panelist number seven. For all we know, he had gone to college, too. He's unemployed now. We don't know what that meant for the past. He had listed... Do we know... Did the prosecutor mention what was listed on his... Something about what he did, gaming, or whatever he did as a pastime, or do we know that, or was that mentioned? It was not mentioned. Okay. I mean, it was... It's listed in the questioning. It was not mentioned by the prosecutor. Right. Does it matter that it wasn't mentioned by the prosecutor? Can we consider what was listed in response to his questionnaire? Well, I'm not sure it goes to any moral life experience, but it certainly could be considered. But there's nothing in what panelist... What juror number 25 said that would give her moral life experience in that regard either. What about the other comparison? I'm sorry. 15 and number six? Yeah. Turn it over. Well, the prosecutor struck panelist number 15, saying that he was concerned about the panelist's views on the size of government, and that this might be held against him for being overly vindictive. Juror number six had the same views about the size of government. He was asked, what do you think about that? That being the proceeding discussion, and said, simply put, it's a necessary evil, and that was the size of government and the bureaucratic nature. And then, importantly, went on to say, to address the actual fear that the prosecutor later claimed to have with respect to panelist number 15, agreed with the defense attorney that one function of the jury is to act as a check on the government's use of its prosecutorial power. So, if the prosecutor had reason to fear panelist number 15, he had even more reason to fear juror number six. Any sense of question, Pam? No. Okay. I do have one. I guess... Okay. If we can go, continue. Don't worry about the time. Okay. I do have one. I'm just speculating here. Let's say the panel says, well, we think the prosecutor's rationale is sufficient on 7-25, but maybe there is something here on this comparison between 15 and 6. How does that change your argument? Do you need both? We don't need both. Does it make any difference? Does the case law make any difference about whether you've got one, or three, or two? No. One is enough. The Supreme Court has been very clear about that, with Miller-El, and Foster v. Chapman. I think it said in Foster, two strikes based on race is one too many, or two too many. And what the court also said in Snyder is, if we have doubts about one, if this court had doubted both, what Snyder instructs is, it's not sure. It could use them both cumulatively to say, well, what does the strike of one say about the other, and vice versa? So it could be used in an additive fashion in that way. So we would ask the court to vacate Mr. Smalley's conviction to remand for a new trial. Thank you. I think we've just asked to start, so we can maybe clear this out of the way. Do you see a difference between clear error and plain error in this context? In this context, on these facts, Your Honor, probably the result is the same. However, analytically, I do think they are different. Clear error asks, of course, on the error portion, whether there is anything in the record to support the trial court's conclusion. Whereas the plain error, or obvious, pronged to, asks whether an error is obvious under settled law. So I think analytically, they're a little different. And let me also say, may it please the court, I would report one on behalf of the United States. Why that's important, I think, that I cited a case called Gooch from the DC Circuit. And it talks about how, for a plain error review in this sort of context, the prosecutor's animus, the racial animus, must have been inherent or manifest, jumped out. And I think that that's just not met here. And so I do think that under the- Sorry, what's your source of that test? It's called Gooch from the DC Circuit Court of Appeals. It's cited in the brief. I think that that's really important because, in this case, because the record was not made below as to the comparative juror analysis, the district court, to find a plain error now, the district court must have performed this comparative juror analysis on the fly when it wasn't raised, and concluded that that comparative juror analysis was more compelling than the sincerity of the prosecutor's stated rationale. Well, isn't that entirely possible here, especially with jurors 15 and 6? The only thing that he had to say about juror number 6 was that that juror basically said, yes, I agree, in response to a series of questions about the size of government power. And there had been several other jurors who had also answered, yeah, I agree, or yeah, I agree. That juror said, I agree. Juror number 15, as he points out, and the judge hears this, says more than that, and agrees with the comparison about the jury being a check or a balance upon the prosecution, which is the reason the prosecutor says this bothered him so much that juror number 6 just agreed with the question. So, I mean, he makes a really strong point on that particular comparison, and I think it is obvious, or potentially is. I don't see why it wouldn't have been obvious, since that's the only reason the prosecutor gave, and the judge had just heard that same questioning, and heard those same responses from these same jurors, and knows that we've got 15. So a couple points to that. So why? Why the distinction between those two jurors? If that's the only reason he gives, and it is. What's important to remember is that at the Batson hearing, because this comparative juror analysis wasn't raised, the prosecutor didn't have an opportunity to explain why he ceded number 6. So I think that it's entirely possible, while giving a perhaps similar answer, which I'll come back to that. It's the same, except it's less. I would push back on that. Less than, yeah. I'd push back on that, Your Honor, that they're the same answers. But number 6 also said that his wife works at a bank, or his fiancée works at a bank. This is a bank fraud case. And it is possible, analytically, for the prosecutor to say, you know, my concerns about you serving on the jury because of your statements about the bureaucracy and size of government, this is my basis to strike you, and there's nothing sufficient to make me feel better. Whereas in number 6's instance, there is something sufficient to make me feel better. But we also have an additional statement by the prosecutor. We have the prosecutor saying, offering his explanation, he said, I work for the bureaucracy. I felt that this juror's response could be against us for being over-vindictive as a prosecutor, a prosecution matter that he might not have an interest in. That's so specific about that response that that juror gave, that juror number 6 gave. I agree. And yet, we have a more specific response from juror number 15 that aligns exactly with the prosecutor's rationale. And that was the prosecutor's opportunity to explain, and that's what he used to explain. So I don't know how we get to go further, even though there was no rebuttal, how do we get to go further and say, well, maybe the prosecutor would have said more than what he said here, which was quite specific, but also pertains to juror number 15. Maybe he would have been able to distinguish somehow. What authority is there for us to engage in that kind of speculation? Well, so the Chamberlain case that's cited in the brief, that's from the Fifth Circuit, it talks about how the reason for striking a juror may not be the opposite side of the coin for seating someone. And that's why these comparative juror analyses are so difficult to conduct on appeal, because we don't necessarily have the opposite side of the alleged coin. We don't know what it was about number 6 that the prosecutor liked and wanted to seat. But we know about number 6, we know about number 15, what the prosecutor didn't like, but still seated. Certainly, but that just comes back to the inquiry that is, the comparative juror analysis can tend to show purposeful discrimination, tend to, but if the prosecutor's rationale for striking 15 was independent of his race, and maybe that is shown through number 6 was a more favorable juror in the prosecutor's eyes, then that tendency is reverted. And I do... Well, can you address what we also have here, though, which is pretty strong statistical evidence? Three Hispanic jurors. Sure, certainly. He uses 50% of his objections to, and they compose less than 10% of the veneer, 10% of the veneer. The prosecutor uses 50% of his objections on these three Hispanic jurors. So first of all... That's good, strong statistical evidence. I think that that can raise, certainly on the first prong of Batson, that can raise, that can satisfy the defendant's burden, that objective evidence can raise this inference of discrimination. But again, the Batson inquiry requires more than that. Step 3 requires the defendants to show, to prove intentional discrimination, and the So while I... Does it come in at all? Does the statistical evidence come in at step 3? I think that it's part of probably the totality of the circumstances, yes. That's what I'm trying to get at. Right. The totality of the circumstances... If you've got something else, if you think maybe you've got something else with this comparative evidence, and you add the statistical evidence to it... That can be considered, certainly. But I think that just the statistical evidence, it doesn't show why the prosecutor did what he did. And in this case, the trial court, after the prosecutor had given his rationales, he said, you know, based on all the information I have before me, I think those rationales are legitimate. And I do want to push back, though, a little bit before I'm unable to, between what number 6 and number 15 said. So the prosecutor was clear that he struck number 15 in regard to his answer to counsel's question about the government being too big. I just took that as, I felt, the bureaucracy. I work for the bureaucracy. I felt that could be held against us for being over-vindictive on a prosecution matter that he might not have an interest in. Okay. At the beginning of this discussion about the size and scope and power of government, juror number 30, who ended up being seated as an alternate, said, you know, I think that the federal agencies, these alphabet agencies, the government, I'm tending to think or I tend to believe that it's grown too much. And then he later says, but, well, maybe I understand a need for it. Defense counsel asks whether anyone agrees or disagrees with that comment. Number 15, the struck juror says, I agree. Doesn't clarify the extent, but he says, I agree after this discussion of the bureaucracy, alphabet agencies, size and scope of government. Then defense counsel calls on number 6 and says, what do you think about that? Or what do you think about it? Not clarifying what it is, what that is. And this is where number 6 says, well, it's a necessary evil. We don't necessarily know if he's talking about the size of government, the bureaucracy. He says, in pretty general terms, it's a necessary evil. And then he agrees with counsel that the burden of proof has got to be beyond reasonable doubt and agrees that perhaps one of the roles of the jury is to provide a check on prosecutorial power. I don't think that response is so identical to number 30, and if adopted by number 15, that the district court should have said, whoa, whoa, whoa, number 6 was definitely talking about bureaucracy and size of government, and there's some vindictiveness here. I just don't think that's the case here. In any event, as I explained, I do think that there are differentiation points between number 6 and number 15, as well as between number 7 and number 25. Judge Moritz, you talked about how education is a different experience, of course, than being unemployed. And I think it's important to go back to what the prosecutor said when striking number 7. One of the lines was, I don't think number 7 would offer much or has the experience to be on a white-collar mortgage-fraud case, and also talked about life experiences. What does he know about his life experience at this point? The fact that he's unemployed. At present, does he know if he's got any higher education, or what it was, did he ask? He did not. In the record, he didn't ask. So he didn't ask about the juror number 25? Number 7. I'm sorry. I mean, with juror 25, it was the college student, right? Right, right. So the prosecutor had asked about her college, and what she was studying, or what year she was. So there was stock questions provided by the... This was all in response to stock questions. And I do want to point out that... So there wasn't any questioning. So the prosecutor was basing, well, we don't exactly know what the prosecutor was basing it on. Right. It is important to note that this... Life experience. Right. And also, just offer much. I think it's perfectly reasonable to think that someone who's studying government and history would offer something unique to a jury than someone who stated they were unemployed, lived with their mom, and offered nothing other than that. And opposing counsel says, well, they never even asked about past employment history. But as I noted in my brief, I believe in a footnote that other venerey persons talked about their past employment. They said, I currently do this, but in the past, I did this. There were four jurors or so. Granted, there was one venerey member who said, I don't know if you want to know about past stuff. But there were also people that provided more of a history. And it's important to point out that number seven provided no such history. Now, even putting aside that being unemployed is, of course, different and brings a different set of perspectives or experience or offerings to juries. Number 25, again, as I pointed out in the brief, I think that it's the record gives rise to this inference that she had a positive experience of law enforcement that she talked about. And I think that that could have certainly been a reason why, even if they provided comparable answers on this one point, that would have been a perfectly legitimate reason. So you're back to, you know, what you think maybe the prosecutor would have said had somebody said, well, I've got this other juror who said the same thing, so you think we should go to what might have been the prosecutor's reasons that the prosecutor didn't state. Yes. And that's what I think that... Right. And I think that that's where the standard of review really comes in crucially here, because it's Mr. Smalley's got to show that the record under clear error has no basis to support this district court ruling or that the error was plain. And if there are these differences, how can it be, if there are these differences between allegedly comparative jurors, how can it be that the prosecutor definitely, definitely interacted with intentional discrimination, that we can make that determination on a clear error or plain error standard on appeal? And so I think that the standard of review is important here. And while I agree with opposing counsel that Van, this court's decision, Van sort of addressed a slightly different question than what we have here. It did talk about, first of all, ways to preserve a Batson claim, which indicates that, you know, the standard of review does matter. You've got to preserve it, which I would argue the comparative juror analysis is not preserved here, and that matters. And also the fact that Batson, because it's so tangled up in the facts that are before the district court, in the district court's observations of the proceedings, it really is important to bring all your arguments before the district court, so that they can make a determination. And when you don't do that, you deprive that determination that's difficult on appeal to these arguments about, well, this is definitely what the prosecutor was doing, if that wasn't even clear below. So I do think that this court has really underscored the import of bringing these arguments to the district court at the time of the Batson challenge. You say that clear error makes a difference here, May, and I understand your argument about that. What's your best argument about why we would apply clear error versus plain error? And address Miller-Ell, if you would. Why we should apply plain error over clear error, Your Honor? Well, I think that Miller-Ell didn't determine whether or not clear error or plain error applies. Well, I mean, yeah, I guess that's my question, is what should we base it on either way? I think the absence of preservation and the fact that Rule 52B doesn't have a carve-out for Batson. I think the Loeffler case, as recently as 2019 from this court, says if you have a different argument, even if it came under the same general umbrella, claim below, but you make a new argument on appeal, that's unpreserved. And I think that that's precisely what happened here. So it's plain error. I do think that even under a clear error standard, this judgment should be affirmed. But not only did Miller-Ell not decide whether plain error or clear error applies because it was habeas posture, of course, Snyder didn't either. Snyder didn't take up the question. And in fact, there's a footnote in Snyder that talks about how the Louisiana State Supreme Court didn't seem to discern any sort of procedural bar and addressed the analysis. So I think that that isn't—there's a quote that's escaping me that's talking about questions lurking in the record. And I don't think that decision was made for these reasons. What about Justice Thomas's dissent? The fact that he dissented on the ground of failure to preserve, doesn't that show that the majority rejected that issue, that position? So in Miller-Ell, Justice Thomas, in the footnote, I believe it's footnote four, talks about how—what evidence was before the state court. And I think that is a habeas edpa-specific analysis, and I think that's what's going on there. And then I don't think that that was the analysis he raised in Snyder. It was different as opposed to, you know, what can the court consider at this posture on appeal? Thank you. Can you say something helpful in 30 seconds? I can. I hope. Just on this notion that you can look to reasons the prosecutor might have given on something different, the Supreme Court rejected that in Miller-Ell, too, when Justice Thomas, in dissent, said, hey, this comparator, her father works for the FBI and she has daily contact with law enforcement, and the Supreme Court, the majority said, you're using something that the prosecutor never gave as a reason, and there's more reason why the prosecutor should have given it here. There were very few comparators, should have known that there would be a comparison with the jurors that we're using comparisons to, and if there was another reason to strike them or to keep them, he should have articulated it. So it's the obligation of the prosecutor at the time, he states his reasons, to anticipate the comparator evidence, whether it comes in or not. Well, when the prosecutor's being accused of acting in a racially or ethnically biased manner, the prosecutor has to provide all his reasons, as Miller-Ell says, and stand or fall on those reasons, and here was every reason for him to give those additional reasons why he kept obvious comparators. Thank you. Thank you, counsel. The case is admitted. Counselor excused. I'd really like to thank counsel today. This is one of those days you're going to have this job because they were challenging cases and they were all well argued. That's really nice. Is court adjourned now? Yeah. Yes. We're not sitting tomorrow. So, okay. Court is adjourned.